UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YVONNE MARIA MCCUTCHEN,

        Plaintiff,

                                CASE NO. 03-CV-72470-DT
                                JUDGE PAUL D. BORMAN
                                MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

CITY OF DETROIT WATER DEPARTMENT,

        Defendant.

_____/

**REPORT AND RECOMMENDATION REGARDING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 56)**

Table of Contents

I.     RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.     Background and Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.     Defendant's October 24, 2003 Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . 3
      C.     Defendant's September 2, 2004 Motion for Summary Judgment . . . . . . . . . . . . 3
      D.     Fed. R. Civ. P. 56 ("Summary Judgment") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      E.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            1.     A review of the facts underlying plaintiff's complaint is helpful to the
                  issues before the Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            2.     Gender discrimination and hostile environment . . . . . . . . . . . . . . . . . . 14
            3.     Defendant is entitled to summary judgment on plaintiff's intentional
                  infliction of emotional distress claim. . . . . . . . . . . . . . . . . . . . . . . . . . 20
            4.     Defendant is not entitled to summary judgment on plaintiff's retaliation
                  claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . 32

I.    **RECOMMENDATION:**  The Court should grant in part and deny in part defendant's

motion for summary judgment.  (Doc. Ent. 56).  Specifically, the Court should deny the motion with

respect to plaintiff's retaliation claim, and grant the motion in all other respects.

II.   **REPORT:**

A.    **Background and Procedural History**

On July 2, 2003, plaintiff filed a pro se, in forma pauperis complaint and motion for other

relief against defendant City of Detroit Water Department ("City of Detroit").  Plaintiff's complaint

was brought pursuant to Title VII of the Civil Rights Act of 1964 (as amended by the Equal

Employment Opportunity Act of 1972), and alleged gender discrimination.  Specifically, plaintiff

complained about the actions of her immediate supervisor, Billingsley; Summers; and security

manager Whethers.  (Doc. Ent. 4).  On the same day, plaintiff filed an amended complaint in which

she also mentioned Billingsley; Summers; and Whethers; as well as Demoss and security manager

Coombs.  (Doc. Ent. 5).[1]  Defendant City of Detroit filed an answer and affirmative defenses on July

28, 2003.  (Doc. Ent. 7).

On March 9, 2004, plaintiff filed a second amended complaint.  (Doc. Ent. 28).  The

complaint names the City of Detroit Water Department as a defendant, and specifically mentions

employees Billingsley, Summers, Ruffin, Milliner, and Weathers.  Amend. Compl. at 1-2 ¶¶ 2, 7-

11.[2]  Guilford Billingsley; Terry Summers and Willie Ruffin are supervisors.  Amend. Compl. ¶¶

---

[1]On July 14, 2003, Judge Borman referred all pretrial proceedings to me.  (Doc .Ent. 6).

[2]It appears that plaintiff may have intended for these individuals to be named as defendants;
however, there is no indication on the docket, either by way of waiver of service or by an entrance
of appearance of counsel, that these five individual defendants have been served with the complaint.
Therefore, the Court treats this case as having only one defendant - defendant City of Detroit Water
Department.

2

7-9.  Anthony Milliner is a service guard and Janice Weathers is the security manager.  Amend. Compl. ¶¶ 10-12.  The causes of action include gender discrimination, sexual harassment, intentional infliction of emotional distress, and retaliation.

Defendant answered this complaint on April 21, 2004.  On May 7, 2004, plaintiff filed a response to defendant's answer.

**B.     Defendant's October 24, 2003 Motion to Dismiss**

On October 24, 2003 (before plaintiff filed her second amended complaint), defendant City of Detroit filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. Ent. 14).  It argued that plaintiff's July 2003 complaint should be dismissed "because it fails to allege sufficient facts to sustain a claim of sexual harassment under Title VII or under any other cognizable legal theory." (Doc. Ent. 14 at 9).  Defendant City of Detroit also argued that plaintiff had failed to state a Title VII retaliation claim.  (Doc. Ent. 14 at 10).  Furthermore, it noted that the complaint was "devoid of any request for damages or any other form of equitable relief."  (Doc. Ent. 14 at 2).

On November 25, 2003, I filed a report recommending that the Court deny defendant's motion to dismiss.  (Doc. Ent. 17).  Specifically, I concluded that plaintiff had alleged a prima facie case of sexual harassment and disagreed that plaintiff's complaint should be dismissed for failure to plead damages.  (Doc. Ent. 17 at 5-6).  On August 5, 2004, Judge Borman entered an order accepting my report and recommendation and denying defendant's motion to dismiss.  (Doc. Ent. 53).

**C.     Defendant's September 2, 2004 Motion for Summary Judgment**

On September 2, 2004, defendant filed a motion for summary judgment.  (Doc. Ent. 56 [Mtn.]).  Referencing plaintiff's March 9, 2004, amended complaint, defendant City of Detroit

contends that "[p]laintiff has had over a year to conduct discovery.  Mtn. Br. at 2-3.  She has been given documents and she has deposed all of the individuals that she has accused in her [amended complaint]."  Mtn. Br. at 3.[3]  Defendant argues that "plaintiff's gender discrimination claim should be dismissed", "plaintiff cannot establish a prima facie case of sexual harassment", "plaintiff's intentional infliction of emotional distress claim is barred by governmental immunity", and "plaintiff's retaliation claim should be dismissed".  Defendant City of Detroit requests that the Court grant its dispositive motion and dismiss plaintiff's complaint with prejudice.  Mtn. Br. at 13.[4]

On October 4, 2004, plaintiff filed a response.  (Doc. Ent. 60 [Rsp.]).[5]  On October 6, 2004, plaintiff filed an amended response.  (Doc. Ent. 62 [Amend. Rsp.]).[6]  Defendant filed a reply on October 22, 2005.  (Doc. Ent. 65 [Rpl.]).

**D.      Fed. R. Civ. P. 56 ("Summary Judgment")**

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[3]Plaintiff was deposed on January 27, 2004.  Mtn. Ex. A.  Janice Weathers and Anthony Milliner were deposed on July 29, 2004.  Mtn. Exhibits M, N.  Terry Summers was deposed on July 30, 2004.  Mtn. Ex. Q.

[4]On September 10, 2004, I entered an order setting the response deadline for October 4, 2004.  On September 10, 2004, plaintiff filed a motion for extension of time to file a response.  On September 16, 2004, I entered an order deeming moot plaintiff's motion.

[5]Attached to this response are five exhibits: (A) various papers mentioning Billingsley and/or Coombs; (B) pages 6-9 of the July 29, 200 Milliner deposition; (C) and (D) pages 50-53 of the July 29, 2004 Weathers deposition and (E) a copy of the March 9, 2004, amended complaint.
A proof of service regarding this response was filed the following day.

[6]Because the amended response post-dates the original response and because it contains more exhibits than the original response, this report and recommendation treats the amended response as superceding the original response.

4

show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> A fact is 'material' and precludes grant of summary judgment if proof of that fact
> would have [the] effect of establishing or refuting one of [the] essential elements of
> a cause of action or defense asserted by the parties, and would necessarily affect [the]
> application of appropriate principle[s] of law to the rights and obligations of the
> parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542 P.2d

867, 872 (1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)). "In evaluating a

motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . . and

assess the proof to determine whether there is a genuine need for trial." *Gantt v. Wilson Sporting

Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).[7]

The movant bears the burden of demonstrating the absence of all genuine issues of material

fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The moving party need not

produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on

the moving party may be discharged by 'showing' – that is, pointing out to the district court – that

there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*,

477 U.S. 317, 325 (1986). Once the moving party discharges that burden, the burden shifts to the

non-moving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e);

*Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his

pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to

---

[7]The Sixth Circuit cited both *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) in support of this
statement.

respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[8]  "[A] verified complaint . . .

would have the same force and effect as an affidavit and would give rise to genuine issues of

material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  However, "[s]upporting

and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be

admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

matters stated therein." Fed. R. Civ. P. 56(e).  *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL

639158, *5 (6th Cir. Sept. 10, 1998) (unpublished) (personal knowledge required); *Daniel v. Cox*,

No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (unpublished) (conclusory assertions are

insufficient for purposes of surviving summary judgment); *Wiley v. United States*, 20 F.3d 222, 226

(6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969))

(cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand*

*Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As the United States

Supreme Courts stated in *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986),  "[T]here is no issue

for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Id*. at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S.

at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

---

[8]25 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").  Plaintiff did not sign her original complaint under penalty of perjury.  (Doc. Ent. 4 at 2).  Plaintiff's July 2, 2003, amended complaint is not signed under penalty of perjury.  (Doc. Ent. 5 at 2).  Plaintiff's March 9, 2004, amended complaint is not signed under penalty of perjury.  (Doc. Ent. 28 at 12).

The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a).  *Anderson*, 477 U.S. at 250.  Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

**E.     Analysis**

**1.     A review of the facts underlying plaintiff's complaint is helpful to the issues before the Court.[9]**

Plaintiff began work as a service guard at defendant City of Detroit Water Department on May 14, 2001.  Amend. Compl. ¶ 5; Amend. Rsp. Ex. A.  She was assigned to the Waste Water Treatment Plant.  Mtn. Br. at 1.  On August 14, 2001, she "successfully completed the ninety-day probationary period[.]" Amend. Compl. ¶ 6; Amend. Rsp. Ex. A.[10]  Plaintiff "was made a permanent employee" and "is still employed with the City as a security guard."  Mtn. Br. at 1; Amend. Rsp. Ex. A.

_____

[9]Plaintiff worked for Guardian before she began her job with defendant City of Detroit.  Mtn. Ex. A at 23; Amend. Rsp. Ex. L at 23  According to an attachment to plaintiff's amended response, plaintiff was discharged from her assigned work site with Guardian Guard Security on January 1, 2001, on the basis that she had failed to take orders.  Apparently, she later refused another job assignment at a lesser rate of pay.  On January 29, 2001, plaintiff filed a complaint with the Michigan Department of Civil Rights (MDCR) alleging discrimination on the basis of gender.  Amend. Rsp. Ex. L.

[10]As defendant City of Detroit explains: "Security guards are subject to a three (3) month probationary period.  At the conclusion of the probationary period, the City may chose to do one (1) of three (3) things: (1) the city may make the employee permanent; (2) the City may extend the probationary period or; (3) the City may terminate the employee."  Mtn. Br. at 1.

During probation weeks one through five, plaintiff received overall evaluations of either "unsatisfactory" or "improvement needed".  Plaintiff's in-service guard training general checklist shows that she received certain types of training from July 1, 2001 to February 9, 2002.  Amend. Rsp. Ex. E.

On October 8, 2001, plaintiff apparently failed to log an exiting vehicle at Post 202.  On October 9, 2001, Billingsley gave plaintiff a written reprimand for poor work performance.  Apparently, the incident was witnessed by Security Manager Townsend.  Mtn. Ex. C.

On October 31, 2001, plaintiff apparently left a prep radio on top of a vending machine in the old administration building.  On November 9, 2001, plaintiff received a three calendar day suspension (11-10-01 - 11-14-01) for poor work performance based upon negligently failing to control prep radio and failing to notify her supervisor when it occurred.  Mtn. Ex. D.

Plaintiff alleges that on or about November 15, 2001, Billingsley "radioed plaintiff into his secluded security office [and] stated, 'Are you going into a nervous breakdown?'"  On or about December 22, 2001, plaintiff was in Billingsley's office and he stated, "Are you hearing voices?" "Something is wrong with you down there!"  Between December 17, 2001 and December 31, 2001, plaintiff complained to Crook, Billingsley's supervisor, that he was harassing her.  Amend. Compl. ¶ 20.

Plaintiff further alleges that on January 19, 2002, Billingsley "forced plaintiff to operate [a] security vehicle by exposing her to toxins that caused [hair] loss[,]" and stomach irritations.  Amend. Compl. ¶¶ 32, 45.  Billingsley "refused to cooperate or discuss work related matters with plaintiff" and told plaintiff he could not authorize her to use his personal security vehicle.  He repeated this act on February 2, 2002.  Amend. Compl. ¶ 46.  On February 8, 2002, Summers forced her to work overtime by not finding her a substitute.  This resulted in Summers ordering seven days off, unpaid.  Amend. Compl. ¶¶ 33, 51.  On February 18, 2002, plaintiff met with Weathers, Bakker and Lewis about transferring away from Billingsley.  Amend. Compl. ¶ 49.  On February 20, 2002, she spoke

on her home phone with Officer Crenshaw "about the harsh harassment that had taken place[.]" Plaintiff claims this conversation is proof that phone tapping had taken place. Amend. Compl. ¶ 50.

At approximately 7:15 p.m. on February 28, 2002, plaintiff completed an incident report in which she accused Summers of employee misconduct. Plaintiff claims that she was twice threatened to be written up and was severely harassed during a car ride. Plaintiff stated that she was not disobeying an order and complained that she could have been hurt. Allegedly, Summers did not respond to her complaint and behaved oddly that day. At approximately 6:50 p.m., Summers completed an incident report accusing plaintiff of employee misconduct and giving his (Summers') version of the events of February 28, 2002.[11] Summers' report was approved by manager Jimmy Townsend. Security Specialist Michael Nelson also completed an incident report at approximately 7:20 p.m. in which he accused plaintiff of conduct unbecoming a service guard. At about 10:14 p.m., Jimmy Townsend completed an incident report summarizing his interview with plaintiff regarding the aforementioned incident. Amend. Rsp. Ex. K.[12]

Apparently, plaintiff trained on a golf cart with Summers on March 7, 2002. Amend. Compl. ¶ 38. On or about March 21, 2002, Chief Steward Mulholland completed a grievance form (104-02) alleging that certain articles of the master agreement had been violated and describing plaintiff's complaints of harassment (reckless driving which caused a neck injury requiring medical attention and time off of work) and retaliation (for filing a previous grievance) by Summers. Amend. Rsp.

---

[11]Summers' report indicates that he turned right; plaintiff fell over in her seat; he looked at her and kept driving; and he did not respond to plaintiff's comment that she "could have had a sore neck for all [he] [knew]." Amend. Rsp. Ex. K.

[12]On March 1, 2002, plaintiff was discharged from an emergency center after having been treated for dysuria. Dysuria is "[p]ainful or otherwise difficult urination." 1 SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, D-172 (1995).

Ex. K.  On April 16, 2002, at the hearing on plaintiff's second step grievance (104-02), Mulholland sought copies of management's evidence; however, management allegedly told him that they did not agree that production of such information was mandatory.  Mulholland disagreed and stated that the union "had the right to all evidence[.]" He completed the investigator's report.  Amend. Rsp. Ex. F.    Plaintiff alleges that on April 18, 2002, she overheard Summers, while on the phone, stating, "I don't care if she don't come in cause you already know she is unstable!"  Amend. Compl. ¶ 24. On April 19, 2002, Summers verbally attacked plaintiff when she called his office to ask him a question.  He screamed three times, "Don't hang up on me!"  Amend. Compl. ¶ 25.

On July 3, 2002, Billingsley and Coombs allegedly harassed plaintiff over missing vehicle keys.  Plaintiff had given the keys to service guard Eduardo Davis and he had informed management of this fact, but Billingsley and Coombs "chose to torment [plaintiff] about the keys anyway." Amend. Rsp. Ex. B.

On July 6, 2002, plaintiff went to Demoss' (plant employee) house to use the home computer "to type short version of legal documents."  Amend. Compl. ¶ 59.  On or about July 26, 2002, the security women's restroom was sprayed with pesticide.  Amend. Compl. ¶ 60; Amend. Rsp. Ex. I at 8-9.

On August 7, 2002, plaintiff apparently improperly used FCC equipment.  On August 11, 2002, plaintiff received a written reprimand from supervisor Crook for poor work performance.  On the same day, plaintiff signed a waiver of labor representation form, stating that she had "decided to proceed with this potential discipline meeting without labor representation."  Mtn. Ex. E; Amend. Rsp. Ex. E.

On August 16, 2002, plaintiff alleges, she overheard Summers, while on the phone, stating "Fucking her is like fucking a child almost like incest!"  She also heard him say, "I know everything about you and every pore in your body!  Do you miss me?"  Amend. Compl. ¶ 28.

In September 2002, Mulholland completed a union grievance (121-02) regarding the alleged July 3, 2002 harassment concerning missing vehicle keys.  Amend. Rsp. Ex. B.

On September 27, 2002, Summers assigned plaintiff with "excessive off site assignments[.]"  Amend. Compl. ¶ 55.

Summers reported plaintiff for an October 21, 2002 incident of employee misconduct based on "some peculiar discrepancies during the course of her shift that day."  On October 22, 2002, Summers completed a security section incident report.  The report was checked by Weathers.[13]  Amend. Rsp. Ex. E.

On October 22, 2002, plaintiff received a written reprimand for poor work performance based upon a failure to record facility zone inspections of patrol officer.  It appears to have been issued by Terry Summers and was signed by Labor Representative Haywood Glen.  Mtn. Ex. F; Amend. Rsp. Ex. E.  An October 22, 2002, notice of three-day suspension (October 22, 2002 - October 26, 2002) based upon insubordination [unnecessary or prolonged discussion with supervisor contrary to such supervisor's directive] and poor work performance [failure to record facility zone inspections of patrol officer] was, apparently, not enforced.  Union and management agreed that plaintiff was not on the clock but noted that insubordination would not be tolerated in the future.  Mtn. Ex. F; Amend. Rsp. Ex. E.  On October 22, 2002, Coombs completed a security section

---

[13]Janice Weathers' October 21, 2002, letter is attached as Mtn. Ex. F.

incident report in which he described the conversation he witnessed between Summers and plaintiff. Weathers checked this report.[14]  Amend. Rsp. Ex. E.

On November 27, 2002, "[p]laintiff filed [an] EEOC complaint against [d]efendant City of Detroit [Water Department][.]" Amend. Compl. ¶ 14.

On December 3, 2002, plaintiff received an oral reprimand for improper uniform. Apparently, she met with Summers and Thomas (Labor Association Representative) for allegedly "[n]eglecting to appear clean and tidy in person and dress, or fail[ing] to wear the proper uniform on duty in the pre[s]cribed manner."  Mtn. Ex. G.

On or about December 12, 2002, Mulholland completed a union grievance form (3811-01) based upon plaintiff's receipt of a citation for poor work performance, stating "Ms. McCutchen was not properly trained and then was unjustly issued a written reprimand for alleged poor work performance."  Amend. Rsp. Ex. E.

On December 24, 2002, plaintiff received an oral reprimand for excessive absenteeism.  On December 25, 2002, plaintiff allegedly refused to follow Ruffin's order to refuel a vehicle. Apparently, Coombs witnessed the incident.  On December 30, 2002, plaintiff received a three calendar day suspension (December 30, 2002 - January 2, 2003) based upon insubordination for refusal without good cause to accept and perform job assignment as directed and when directed.  The suspension was issued by Ruffin and reviewed by James Crook.  In a five-page January 2, 2003, AFSCME Local 207 member statement, plaintiff described her version of the events of December 25, 2002, and stated that Coombs needed to be fired for past acts of harassment.  Mtn. Ex. H; Amend. Rsp. Ex. E.

---

[14]Janice Weathers' October 22, 2002 letter is attached as Mtn. Ex. F.

On January 16, 2003, plaintiff allegedly told Weathers that an officer called her (plaintiff) a foul name during police academy training. Weathers stated, "Are you hearing things?" Amend. Compl. ¶ 29.

Plaintiff alleges that on June 21, 2003, she was sexually assaulted by co-worker Milliner. Plaintiff reported him to her supervisor, Ruffin, and her manager, Weathers. Amend. Compl. ¶ 31. On June 22, 2003, plaintiff filed a complaint with the Detroit Police Department against Milliner alleging that he had grabbed her buttocks on June 21, 2003. A warrant was denied based upon insufficient evidence. Mtn. Ex. P.

On or about June 24, 2003, steward Haywood Glenn completed a union grievance report concluding that plaintiff had been targeted. Amend. Rsp. Ex. E. On June 27, 2003, plaintiff wrote to security management describing the alleged June 22, 2003, incident with Milliner. In a June 27, 2003, follow up/investigation, Weathers documented her June 25, 2003, conversation with Ruffin and an apparent June 26, 2003, conversation with plaintiff. In a July 1, 2003 follow up/investigation, Weathers stated in part that "[t]he facts presented make the allegations of Ms. McCutchen [regarding Milliner] false." Mtn. Ex. O; Amend. Rsp. Ex. C.

On July 2, 2003, plaintiff filed the instant case.[15]

_____

[15]The record also contains documentation dated after the filing of the original complaint:

On September 3, 2003, plaintiff received her first written reprimand for excessive absenteeism. This was apparently based upon five absences (June 16, 2003; July 17, 2003; August 23, 2003; August 25, 2003; and August 27, 2003) during a ninety-day period. Mtn. Ex. I.

On or about December 31, 2003, plaintiff completed a grievance (52-04) regarding a November 25, 2003 attempt to give her a three-day suspension for a November 17, 2003 incident. Amend. Rsp. Ex. E.

On January 2, 2004, plaintiff completed a City of Detroit FMLA request for leave form. By a January 7, 2004, letter, plaintiff's intermittent FMLA leave was approved for the period January 6, 2004 - June 30, 2004. Amend. Rsp. Ex. E.

On January 9, 2004, the AFSCME Local 207 president notified the division head that the

13

## 2.    Gender discrimination and hostile environment

Specifically with regard to gender discrimination, plaintiff asserts that she "was the target of intimidation[,] ridicule and insult by [d]efendant City of Detroit and its employees, agents because she is a woman[.]" Amend. Compl. ¶ 15.  Plaintiff claims that "[t]his is the reason why Management of Defendants City of Detroit despitefully [sic] violated plaintiff's Civil Rights when they chose only to provide plaintiff with only poor and inadequate training." Amend. Compl. ¶ 16. Specifically, she claims:

> This was carried out when ordering several guards to train plaintiff at the Waste Water Treatment Plant site and then closely monitoring and critiquing all of plaintiff's work performances.  Also Mr. Billingsley later stated that the workers were not satisfied with plaintiff's work performance[.]  Mr. Billingsley singled plaintiff out when assigning plaintiff with excessive and strenuous duties and a day before plaintiff's probation ended Mr. Billingsley, plaintiff's immediate supervisor, informed plaintiff that she almost did not pass probation.  Around 11-15-2001, Mr. Billingsley radioed plaintiff into his secluded security office when he stated, "Are

---

Union intended to appeal grievance LT-52-04 and requested that William Wilson and Michael Mulholland be released to attend the meeting on the grievance.

On March 29, 2004, psychiatrist Shiener conducted a psychiatric evaluation on plaintiff.  Dr. Shiener's report is dated June 10, 2004.  Mtn. Ex. J; Amend. Rsp. Ex. L.  Dr. Shiener concluded, among other things, that plaintiff had "a very poor work record and a nontraditional work ethic." Mtn. Ex. J.

On April 20, 2004, psychologist Stettner opined that plaintiff had "a mixed pattern of anxiety, depression, and confused thinking that interferes with her work and overall social-emotional adjustment."  Amend. Rsp. Ex. K.

On June 23, 2004, plaintiff was issued a three day suspension based upon five occurrences of absenteeism (April 4, 2004; April 8, 2004; May 4, 2004; May 5, 2004; June 15, 2004 and June 21, 2004).  The suspension was issued by Coombs and reviewed by Weathers.  On the same day, plaintiff completed a grievance form regarding the June 21, 2004 attendance discrepancy.  Amend. Rsp. Ex. E.

From August 10, 2004 - August 24, 2004 the City of Detroit sought applications for a Water and Sewerage Commercial Operations Field Services Representative.  Amend. Rsp. Ex. E.

On September 15, 2004, plaintiff received a seven-day suspension based upon five occurrences of absenteeism (July 2, 2004; July 6 & 7, 2004; July 23, 2004; August 3, 2004; August 27, 2004 and September 11, 2004).  The suspension was issued by Coombs and reviewed by Weathers.

14

you going into a nervous breakdown?"  Around 12-22-2001, plaintiff was in Mr. Billingsley['s] office when he stated, "Are you hearing voices?"  "Something is wrong with you down there!"  Between 12-17-2001, and 12-31-2001, plaintiff went over Mr. Billingsley's head to his supervisor, Mr. Crook, and informed him that Mr. Billingsley was harassing plaintiff.  During mid-probation Mr. Billingsley finally allowed plaintiff and another female guard to patrol the perimeter[.] [Mr. Billingsley] asked plaintiff she had any questions.  Plaintiff then asked, "where are all the danger zones?"  Mr. Billingsley then underhandedly gave insufficient or inaccurate information by stating, "You'll find them!"

Amend. Compl. ¶¶ 16-23.  As a result, plaintiff claims she "has sustained injuries and damages, including but not limited to mental and emotional distress, loss of reputation and esteem in the community, loss of the ordinary pleasures of life, and legal fees."  She seeks $100,000.00 in damages.  Amend. Compl. at 4.

In order to establish a prima facie case of gender discrimination under Title VII, [plaintiff] must show that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) that she was treated differently from similarly situated members of the unprotected class."  *Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 305 (6th Cir. 2003) (citing *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 402-03 (6th Cir.1999)).  Similarly, "in order for a plaintiff to establish a prima facie Title VII claim of hostile environment sexual harassment by a coworker, she must demonstrate that the following elements of the statutory tort are present: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take

15

prompt and appropriate corrective action." *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-830 (6th Cir. 1999).

A female is a member of a protected class for purposes of gender discrimination. *Cuddeback v. Florida Bd. of Educ.*, 381 F.3d 1230, 1236 (11th Cir. 2004); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999). However, defendant argues that plaintiff's gender discrimination claim must fail, because plaintiff has not "establish[ed] any of the elements other than her gender." Mtn. Br. at 4. Similarly, defendant argues that plaintiff has not alleged a prima facie case of sexual harassment. First, defendant City of Detroit argues, "[p]laintiff cannot show that she was subject to unwelcomed sexual harassment[.]" Mtn. Br. at 6. Defendant argues that plaintiff has not produced evidence in support of her claims. Mtn. Br. at 6. Second, defendant City of Detroit argues, "[p]laintiff cannot show that any alleged harassment created a hostile work environment[.]" Mtn. Br. at 7. Third, defendant City of Detroit argues, "[p]laintiff has failed to show that the City failed to take prompt remedial action." Mtn. Br. at 7.

Defendant argues that plaintiff has "failed to present any evidence showing that she suffered an adverse employment action." Mtn. Br. at 4. Defendant notes that plaintiff has been suspended for poor work performance but argues that "a suspension by itself is not enough to establish an adverse employment action." Mtn. Br. at 4. For purposes of the motion at bar, the Court should disagree.

"An adverse employment action is a 'materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct.'" *Mitchell v. Vanderbilt University*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996)). *See also Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002). "'[A]

16

materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Bowman v. Shawnee State University*, 220 F.3d 456, 461-462 (6th Cir. 2000) (quoting *Hollins v. Atlantic, Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (citation omitted)). *See also White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) ("'[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (citing *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998)).

"Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, *suspensions*, and other indices unique to a particular situation." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575-576 (6th Cir. 2004) (citing cases) (emphasis added). In the case at bar, plaintiff received three-day suspensions on November 9, 2001 and December 30, 2002. Mtn. Exhibits D and H; Amend. Rsp. Ex. E. Assuming these suspensions were without pay, they are adverse employment actions. *White*, 364 F.3d at 791 ("[A] thirty-seven day suspension without pay constitutes an adverse employment action regardless of whether the suspension is followed by a reinstatement with back pay."); *McKethan-Jones v. Ohio Dept. of Health*, No. 00-3084, 2001 WL 345782, **3 (6th Cir. 2001) (unpublished) ("Aside from Jones's five-day suspension without pay, none of the alleged instances

17

of retaliatory conduct is severe enough to meet this circuit's standard for an adverse employment action.").[16]

Defendant also argues that "[p]laintiff cannot show that [the] reason that the suspensions were given was because of her gender[,]" Mtn. Br. at 5. It further argues that plaintiff "has failed to identify any similarly situated males[,]" noting that "[n]ot once in [p]laintiff's Third Amended Compl[ai]nt does she give the name of any similarly situated male employee who was treated differently." Mtn. Br. at 5. The Court should agree, and conclude that plaintiff's gender discrimination and hostile work environment claims fail for this reason.

In her amended response, plaintiff claims that defendant City of Detroit "has a history of sexual disparity and treatment against [p]laintiff who is a **[b]lack female** employee[.]" According to plaintiff, on July 3, 2002 supervisors Billingsley and Coombs "[h]arassed [her] about missing vehicle keys[] and tormented [her] in the workplace." Amend. Rsp. at 1; Amend. Rsp. Ex. B. Also, she mentions a December 2002 incident (presumably resulting in the December 30, 2002 suspension) where she was allegedly "forced to refuel a vehicle at a fuel [p]ump which had caution tape around it while a male service guard was allowed to go to another plant site to refuel." Furthermore, she claims to have been "written up for saying she needed to go to the City doctor over

_____

[16]As previously noted, the October 22, 2002, three-day suspension was apparently not enforced. Mtn. Ex. F; Amend. Rsp. Ex. E. *See Virostek v. Liberty Township Police Department/Trustees*, Nos. 99-3809 and 99-3893, 2001 WL 814933, **7 (6th Cir. 2001) (unpublished) ("Although the record indicates that the investigation of the encounter between Shimko and Virostek resulted in the recommendation of a one-day suspension without pay for Virostek, this one-day suspension without pay never was served, and Virostek testified that she had not "suffered any loss as a result." J.A. at 856. We do not believe that an investigation alone is sufficient to establish an adverse employment action.").

the prep radio[,]" while, apparently, the same was not true for "[a] male service guard [who] made an improper statement over the prep radio to Supervisor Terry Summers."  Amend. Rsp. at 2.

Title VII does not establish a general workplace civility code.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  As the Court has explained, "Title VII does not prohibit all verbal or physical harassment from the workplace."  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998).  Thus, it is not enough for plaintiff to show that she was subject to harassment; rather, she "must produce evidence that she was the object of harassment *because of her gender*."  *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (emphasis added). Here, plaintiff has failed to offer any such evidence.  Plaintiff has offered no direct evidence of discrimination.  She does not allege any statements by any of the employees involved which demonstrate that she was targeted because she is a woman.  Nor has she offered any evidence to show that she was treated differently from similarly situated male employees.  Her "evidence of discrimination consists of unsupported allegations and conclusions that are insufficient as a matter of law to [establish] that she was [treated differently] because of her gender."  *Scott v. Central Sch. Supply Co.*, No. 96-5238, 1997 WL 420505, at *3 (6th Cir. July 8, 1997); *see also*, *Lee v. U.S. Postal Service*, No. 00-4053, 2001 WL 700871, at *1 (6th Cir. 2001) (citing *Allen v. Michigan Dep't of Corrs.*, 165 F.3d 405, 413 (6th Cir.1999) ("Mere conclusory allegations of discrimination are insufficient to state a claim under Title VII.").

In short, "[p]laintiff offers no evidence to show that [the defendant's employees] acted as [they] did because she is a woman, or that the hostility in her workplace was in any way related to her sex."  *Black v. Columbus Pub. Schs.*, 124 F. Supp. 2d 550, 564 (S.D. Ohio 2000), *aff'd in relevant part, vacated in part on other grounds*, 79 Fed. Appx. 735 (6th Cir. 2003).  "While [s]he

19

may have been subject to intimidation, ridicule, and mistreatment, [s]he has not shown that [s]he was

treated in a discriminatory manner because of [her] gender." *Bowman v. Shawnee State Univ.*, 220

F.3d 456, 464 (6th Cir. 2000). Accordingly, the Court should conclude that defendant is entitled to

summary judgment on plaintiff's gender discrimination and hostile environment claims. *See*

*Nickerson v. Potter*, 102 Fed. Appx. 936, 937 (6th Cir. 2004); *Nelson v. General Electric Co.*, 2 Fed.

Appx. 425, 431 (6th Cir. 2001); *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 253-54 (6th

Cir. 1998); *Burns v. Jacor Broadcasting Corp.*, 128 F. Supp. 497, 511 (S.D. Ohio 2001).

**3.     Defendant is entitled to summary judgment on plaintiff's intentional infliction of emotional distress claim.**

In support of her state law tort claim of intentional infliction of emotional distress, plaintiff

makes several allegations:

> On 1-19-2002, Mr. Billin[gs]ley forced plaintiff to operate [a] security vehicle by exposing her to toxins that caused loss of hair. Amend. Compl. ¶ 32.

> On 2-8-2002, Mr. Summers (supervisor) neglected his duties by forcing plaintiff to work overtime hours by not attempting to find plaintiff a relief that later resulted in Mr. Summers receiving seven days off without pay. Amend. Compl. ¶ 33.

> Immediately after plaintiff's transfer to the Huber Plant Site Mr. Summers carried out a critical plan of retaliation on 2-28-2002. It was carried out when Mr. Summers made unreasonable changes in plaintiff's work assignment, giving inaccurate information by refusing to discuss work related matters with plaintiff because plaintiff complained about and resisted harassment, discrimination or retaliation and then forced plaintiff to ride in a security vehicle with him. At this point Mr. Summers drove in such a way that it caused plaintiff's body to be thrown back and forth in the security vehicle. These harmful acts caused undue pain and injury in plaintiff's neck whereas the rest of plaintiff's body was left trembling. Henceforth, Mr. Summers and management is guilty of falsely denying and covering up the above criminal acts or misconduct. This act was repeated on 3-7-2002, while in training with Mr. Summers on a golf cart. Amend. Compl. ¶¶ 34-38.

Plaintiff claims she stayed in this job for financial reasons but states she is seeking another job.

Amend. Compl. ¶¶ 39-41. According to plaintiff, "no greater mental or physical damage has been

done to any other race as it has upon the [b]lack [f]emale[.]" Amend. Compl. ¶ 42. Plaintiff asserts that she "has been denied her right to work in a neutral environment where individuals are to be treated with respect and dignity as not to offend their sensibilities and where a person can be trained to reach their highest potential and succeed or fail on their own merits." Amend. Compl. ¶ 43. Plaintiff contends that "[m]ost of these conspirators have a twenty-year relationship and deserve[] to be punished in a court of law for continuing this deadly harassment course." Amend. Compl. ¶ 44. As a result, plaintiff claims she "[h]as sustained injuries and damages, including but not limited to mental and emotional distress, loss of reputation and esteem in the community, loss of the ordinary pleasures of life, and legal fees." Plaintiff seeks $200,000.00 in damages. Amend. Compl. at 8.

"Four elements are generally considered to be essential to a prima facie claim for intentional infliction of emotional distress: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir. 1996) (citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905, 908 (1985)). However, Michigan law provides that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407(1).[17]

_____

[17]"To determine whether a governmental agency is engaged in a governmental function, the focus must be on the general activity, not the specific conduct involved at the time of the tort." *Pardon v. Finkel*, 213 Mich.App. 643, 649, 540 N.W.2d 774, 776 (1995) (citing *Smith v. Dep't of Public Health*, 428 Mich. 540, 410 N.W.2d 749 (1987)). "A governmental function is an activity expressly or impliedly mandated or authorized by the constitution, statute, or other provision of law." *Payton v. City of Detroit*, 211 Mich.App. 375, 392, 536 N.W.2d 233, 241 (1995) (citing *Ross v. Consumers Power Co. (On Rehearing)*, 420 Mich. 567, 620, 363 N.W.2d 641, 661 (1984)). *See also Jachyra v. City of Southfield*, No. 95-1009, 1996 WL 520795, **7 (6th Cir. 1996) (unpublished); *Howard v. City of Southfield*, No. 95-1014, 1996 WL 518062, **8-**9 (6th Cir.

Defendant City of Detroit argues that governmental immunity bars plaintiff's claim for intentional infliction of emotional distress. Mtn. Br. at 8-12. First, defendant argues, "[t]o the extent that [p]laintiff's claims rely on any alleged intentional conduct on behalf of the City, Michigan [c]ourts are unequivocally clear in holding that there is **no intentional tort exception** to the statutory grant of governmental immunity, when a governmental entity is engaged in a governmental function." Mtn. Br. at 11. Because "there is no exception to governmental immunity for intentional torts[,]" *Kahlich v. City of Grosse Pointe Farms*, No. 03-2060, 2005 WL 65515, **5 (6th Cir. Jan. 10, 2005) (unpublished) (citing *Payton v. City of Detroit*, 211 Mich.App. 375, 536 N.W.2d 233, 241 (1995)), the Court should agree with defendant City of Detroit that "to the extent that [p]laintiff's claims against the City stem from the alleged intentional . . . acts of its employees, they must fail." Mtn. Br. at 11-12.

Second, defendant argues, "[p]laintiff's tort claims do not fall within any of the enumerated exceptions to the statutory grant of governmental immunity." Mtn. Br. at 11. "There are only five statutory exceptions to governmental immunity, the 'highway exception,' M.C.L. § 691.1402, the 'motor vehicle exception,' M.C.L. § 691.1405,[18] the 'public building exception,' MCL 691.1406,

---

1996) (unpublished).

    Plaintiff does not argue that defendant was not engaged in a governmental function. In any event, to the extent defendant City of Detroit Water Department was supervising its employee in the course of its function as a water department, it was performing a governmental function. *See Galli v. Kirkeby*, 398 Mich. 527, 537, 248 N.W.2d 149, 152 (1976) ("the screening, hiring and supervision of school district personnel by the Board in the course of its educational function was an act 'in the exercise or discharge of a governmental function.'").

    [18]"Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948." Mich. Comp. Laws § 691.1405 ("Government owned vehicles; liability for negligent operation").

the 'proprietary function exception,' M.C.L. § 691.1413, and the 'governmental hospital exception,' M.C.L. § 691.1407(4)." *McDowell v. City of Detroit*, 264 Mich.App. 337, 356, 690 N.W.2d 513, 525 (Jan. 5, 2005). Plaintiff argues that her tort claims fall within a statutory exception to Mich. Comp. Laws § 691.1401. Amend. Rsp. at 3. However, she does not mention one of the five statutory exceptions.[19] Furthermore, the "motor vehicle exception" does not apply to the golf cart claims, because plaintiff alleges intentional, and not negligent, conduct.[20]

Third, defendant argues, "the city cannot be held vicariously liable for the intentional torts of its employees." Mtn. Br. at 11. To the extent plaintiff's intentional infliction of emotional distress claim is based upon a vicarious liability theory, defendant City of Detroit remains immune from liability. *See Vine v. County of Ingham*, 884 F.Supp. 1153, 1162 (W. D. Mich. 1995) (citing *Ross*, 420 Mich. at 592)[21] ("because Deputy Maier [Ingham County Sheriff Deputy/Paramedic] was

---

[19]Specifically, plaintiff argues that "[c]ontracts are an exception to government[al] immunity[,]" and her employment with defendant City of Detroit was a "contract at-will[.]" She cites the City of Detroit policies on violence in the work place and EEOC documents on sexual harassment, Amend. Rsp. Ex. G, as contract terms of her employment and claims she was "denied the rights, [p]rivileges and protection of her employment." Plaintiff characterizes her the third count in her amended complaint as a breach of employment contract rather than intentional infliction of emotional distress. Because this count is contractual in nature, she argues it is not barred by governmental immunity. Amend. Rsp. at 3.

There are two reasons why this argument does not change my recommendation. First, Count Three (Intentional Infliction) of plaintiff's March 9, 2004 amended complaint, Amend. Compl. ¶¶ 32-44, does not mention the employment contract which she claims has been breached. Second, if plaintiff intends to bring a breach of contract claim, then she should amend her complaint to allege a breach of employment contract claim which states a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 15. Changing the character of a claim solely within a response to a dispositive motion does not operate to amend the complaint.

[20]"The burden is on the plaintiff to plead affirmatively in avoidance of governmental immunity in stating its claim." *Mitchell v. Cole*, 176 Mich.App. 200, 215, 439 N.W.2d 319, 325 (1989) (citing *Meadows v. Detroit*, 164 Mich.App. 418, 432, 418 N.W.2d 100 (1987)).

[21]In light of defendant's reliance upon *Alexander v. Riccinto*, 192 Mich. App. 65, 71-72, 481 N.W.2d 6, 9 (Nov. 19, 1991), Mtn. Br. at 10-11, a brief discussion of *Ross* and § 691.1407 is

indisputably involved in a governmental activity which does not fall within a statutory exception, the County is clearly immune from vicarious liability under M.C.L. § 691.1407."); *Taylor v. Bomar-Parker*, No. 231085, 2003 WL 21978753, *1 n.2 (Mich.App. 2003) (unpublished) (noting trial court's decisions on motions for summary disposition that "plaintiff failed to allege any facts in avoidance of governmental immunity" and "the city was immune whether Wallace [City of Detroit bus driver] behaved intentionally or was grossly negligent."); *John Carlo, Inc. v. City of Auburn Hills*, No. 208521, 1999 WL 33453370, *2 (Mich.App. 1999) (unpublished) ("Plaintiff

---

appropriate. Mentioning Mich. Comp. Laws § 691.1405 (motor vehicle exception), *Ross* held that "[v]icarious liability for all other torts may be imposed on a governmental agency only when its officer, employee or agent, acting during the course of his employment and within the scope of his authority, commits a tort while engaged in an activity which is non-governmental or proprietary, or which falls within a statutory exception." *Ross v. Consumers Power Co.*, 420 Mich. 567, 591-592, 363 N.W.2d 641, 647 (Dec. 28, 1984). As to sovereign immunity, the Michigan Supreme Court stated: "In summary, at the time § 7 [§ 691.1407] was enacted and became effective, the state enjoyed immunity from tort liability at common law whenever it was engaged in the exercise or discharge of a governmental function, unless a statutory exception was applicable. This common-law sovereign immunity was codified by the second sentence of § 7. The immunity granted to the state by the first sentence of § 7 is essentially coextensive with this common-law immunity. We note that this interpretation furthers the Legislature's intent to create uniform standards of liability for state and non-sovereign governmental agencies." *Ross*, 420 Mich. at 608, 363 N.W.2d at 655.

Following *Ross*, the legislature provided that Mich. Comp. Laws § 691.1407 "shall not apply to causes of action which arise before July 1, 1986." P.A.1986, No. 175, § 3(1). Approximately five years later, in *Alexander v. Riccinto*, 192 Mich. App. 65, 71-72, 481 N.W.2d 6, 9 (Nov. 19, 1991), the Michigan Court of Appeals stated: "Inasmuch as the instant action arose in February 1986, we review the issue under the standards enunciated in *Ross v. Consumers Power Co. (On Rehearing)*, 420 Mich. 567, 363 N.W.2d 641 (1984), and not the governmental immunity statute, M.C.L. § 691.1407; M.S.A. § 3.996(107), which covers only causes of action arising after July 1, 1986." *Alexander v. Riccinto*, 192 Mich.App. 65, 70, 481 N.W.2d 6, 8-9 (citing *Ross*, 420 Mich. at 592). The Court then stated: "If the factfinder determines that defendant Riccinto acted in good faith and in the course of his employment and was thus engaged in the exercise of a governmental function, the defendant city is immune, from tort liability. If the factfinder determines that defendant Riccinto did not act in good faith or in the course of his employment, the defendant city is still immune, because it cannot be held vicariously liable for the intentional torts of its employees." *Alexander*, 192 Mich.App. 65, 71-72, 481 N.W.2d 6, 9.

failed to allege facts that establish a recognized exception to the immunity afforded by § 1407. Further, plaintiff's vicarious liability claim against the City for the alleged negligence of OHM [contractor] is similarly barred by governmental immunity.") (citing *Payton v. City of Detroit*, 211 Mich.App 375, 393; 536 NW2d 233 (1995)); *Concerned Parents of Medically Subsidized Adopted Children v. Department of Social Services*, No. 201000, 1998 WL 1990879, *1 (Mich.App. 1998) (unpublished) (where defendant's general activities were reviewing and approving adoption subsidies and where defendant's employees' specific conduct was arguably intentional defamation, "defendant's employees' conduct [fell] under the definition of a 'governmental function' and defendant [wa]s immune from vicarious liability under M.C.L. § 691.1407(1); MSA 3.996(107)(1).").

In light of the foregoing, the Court should conclude that defendant is entitled to summary judgment on plaintiff's intentional infliction of emotional distress claim.

**4.     Defendant is not entitled to summary judgment on plaintiff's retaliation claim.**

With regard to a Title VII retaliation claim, plaintiff describes several instances:

[D]uring mid probation plaintiff and another female guard were finally allowed to patrol the perimeter[.] Mr. Bilingsley asked us if we had any questions.  Plaintiff then asked, "where are all the danger zones?"  Mr. Bilingsley then underhandedly gave insufficient and inaccurate information by stating, "You'll find them.["]   Amend. Compl. ¶¶ 47-48.

On 1-19-2002, Mr. Billingsley forced plaintiff to operate a highly toxic vehicle that caused stomach irritations and loss of hair.  This retaliation was carried out when Mr. Billingsley refused to cooperate or discuss work related matters with plaintiff and when Mr. Billingsley stated that he could not authorize plaintiff his personal security vehicle.  This act was repeated on 2-2-2002.  Amend. Compl. ¶ 45-46.

On 2-8, 2002, Mr. Summers neglected his duties by forcing plaintiff to work overtime hours by not attempting to find plaintiff a relief that later resulted in him receiving seven days off without pay.  Amend. Compl. ¶ 51.

25

Just before plaintiff's transfer from the Waste Water Plant site a coworker stated that [her] phone was being tapped . . . and that Mr. Billingsley had a job to do. This also related to when plaintiff had a face to face conversation on 2-18-2002, with manager Ms. Weathers, Mr. Bakker and Mr. Lewis about transferring away from Mr. Billingsley. [On] 2-20-2002, . . . plaintiff had [a] phone conversation (at residence) with Officer Crenshaw about the harsh harassment that had taken place that proves phone tapping was involved. Amend. Compl. ¶¶ 49-50.

Immediately after plaintiff's transfer to the Huber Plant site Mr. Summers carried out a critical plan of retaliation on 2-28-2002. It was carried out when Mr. Summers made unreasonable changes in [plaintiff's] work assignment, and gave inaccurate and insufficient information by refusing to discuss work related matters with [her] because [she] resisted harassment, discrimination or retaliation as he forced plaintiff to ride in a security vehicle with him. At this point Mr. Summers drove in such a way that it caused plaintiff's body to be severely thrown back and forth in the security vehicle. These harmful acts caused plaintiff to suffer undue neck and nerve injury whereas the rest of plaintiff's body was left trembling. Henceforth, Mr. Summers and management [are] guilty of falsely denying and covering up the above criminal acts or misconduct. This act was repeated on 3-7-2002, while in training with Mr. Summers while on a golf cart. Amend. Compl. ¶¶ 52-54.

[O]n 7-6-2002, [she] went over Mr. Demoss's house (plant employee) to use computer . . . to type short version of legal documents[] by pressing recall to memory." On 7-26-2002, . . . Ms. Weathers exposed plaintiff to a harmful chemical pesticide that she ordered to be released in the security women's restroom. This particular event/fumigation occurred one hour before plaintiff arrived on duty that later caused heart palpitations. Amend. Compl. ¶¶ 59-60.

On 9-27-2002, Mr. Summers also assigned plaintiff with excessive off site assignments[.] And as a result, on 10-22-2002, Ms. Weathers issued plaintiff a reprimand for not completing an on site assignment that occurred while off the clock. Ms. Weathers, nonetheless, made an unfair statement when she told Mr. Glenn (steward), "I should just go ahead and let her fight it!" After the grievance procedure Mr. Glen stated that Ms. Weathers informed him that she was trying to build a file against plaintiff's employment status to terminate at [a] later date[.] Moreover, on many occasions Ms. Weathers has tried to persuade plaintiff . . . to fill out voluntary quit forms. Amend. Compl. ¶¶ 55-58.

Plaintiff claims that "[o]n several occasions Ms. Weathers and her colleagues [have] followed plaintiff on and around the plant site, persistently hounded and kept track of plaintiff's every move." Amend. Compl. ¶ 61. Plaintiff states that "[o]n many . . . day[s][,] [m]anagement and colleagues

26

ha[ve] asked plaintiff how were off days spent."  Amend. Compl. ¶ 62.  According to plaintiff,

"[t]his is the reason behind why management chose to torment and sabotage plaintiff's work file by

falsifying and flooding it with illegal reprimands [th]at are dated in a pattern along with other

incidences and degrading remarks."  Amend. Compl. ¶ 63.  Plaintiff contends that "[t]wo other

females were treated in like manner who also wrote harassment statements to the Human Resource

Department and nothing has bene done about the matter."  Amend. Compl. ¶ 64.[22]  Plaintiff claims

she notified the union one and one half years ago.  Amend. Compl. ¶ 64.  As a result, plaintiff claims

she "has sustained injuries and damages, including but not limited to mental and emotional distress,

loss of reputation and esteem in the community, loss of the ordinary pleasures of life, and legal

fees."  Plaintiff seeks $100,000.00 in damages.  Amend. Compl. at 12.

Defendant City of Detroit claims that "the mere mention of the word retaliation is not enough

to survive a motion to dismiss."  It argues that "[p]laintiff has failed to state a claim for retaliation

under Title VII.."  Mtn. Br. at 12.

The elements of a prima facie case of Title VII retaliation are that "(1) [plaintiff] engaged

in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3)

defendant thereafter took adverse employment action against the plaintiff, *or the plaintiff was

subjected to severe or pervasive retaliatory harassment by a supervisor*; and (4) there was a causal

connection between the protected activity and the adverse employment action *or harassment*."

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).  The Court should

---

[22]As previously noted, plaintiff has provided copies of a February 12, 2003 letter of Service
Guard Denise Berryhill-King which alleges harassment by Billingsley and Holts and a June 3, 2002
letter of Carmella Allen which alleges harassment by Billingsley.  Amend. Rsp. Ex. B.

conclude that plaintiff has presented sufficient evidence to withstand summary judgment with respect to each of these four elements.

First, the record contains examples of at least four grievances filed by plaintiff or by someone else on plaintiff's behalf:

(1)     On or about March 21, 2002, Chief Steward Mulholland completed a grievance form (104-02) describing plaintiff's complaints of harassment against Summers (specifically mentioning two driving incidents - presumably the 2-28-02 and 3-7-02 golf cart incidents) and retaliation by Summers (for filing a previous grievance regarding the 2-8-02 incident which allegedly resulted in Summers receiving a seven day suspension]).  Amend. Rsp. Ex. K.

(2)     In September 2002, Mulholland completed a union grievance (121-02) regarding the alleged July 3, 2002 harassment by Billingsley and Coombs concerning missing vehicle keys.  Amend. Rsp. Ex. B.

(3)     On or about December 12, 2002, Mulholland completed a union grievance form (3811-01) based upon plaintiff's receipt of a written reprimand for poor work performance [presumably the October 22, 2002 written reprimand apparently issued by Summers and signed by Glen], stating "Ms. McCutchen was not properly trained and then was unjustly issued a written reprimand for alleged poor work performance."  Amend. Rsp. Ex. E.

(4)     On or about June 24, 2003, Chief Steward Haywood Glenn completed a steward's grievance report.  Glenn met with supervision representatives regarding alleged insubordination by plaintiff as a service guard.  Glenn concluded that plaintiff was being singled out by supervision and had been targeted.  Amend. Rsp. Ex. E.

"An employee 'need not establish that the conduct [s]he opposed was in fact a violation of Title VII,' but rather, only that she had a 'good faith, reasonable belief' that the underlying employment practice was unlawful."  *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (citing *Manoharan*, 842 F.2d at 593).  Therefore, to the extent that the March 21, 2002 and September 2002 union grievances complain about conduct which she reasonably and in good faith believed violated Title VII, she engaged in conduct protected by Title VII. *Sims v. Albemarle Corp.*, 2002 WL 32317682, *9 (D.S.C. 2002) ("Plaintiff is not able to maintain a Title VII retaliation claim

28

based on allegations that he was retaliated against for filing a union grievance or for seeking additional medical advice because this is not the type of conduct that is in and of itself protected by Title VII, although to the extent Plaintiff claims that he was terminated for complaining in his union grievance about discriminatory practices, this would constitute protected activity for purposes of a Title VII claim.").  Furthermore, it does not matter that these grievances were filed by union stewards on plaintiff's behalf.  *E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 545-546 (6th Cir. 1993) ("the words in the statute at issue in the present case [42 U.S.C. § 6000e-3(a)[23]]–'because he has opposed any practice made an unlawful employment practice under this subchapter' should be broadly construed to include a claim in which an employee, or his representative, has opposed any practice made an unlawful employment practice.").  *But see Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996) (interpreting 29 U.S.C. § 623(d),[24] "[t]o the extent that this case stands for the proposition that a plaintiff automatically has standing to sue for retaliation when a relative or friend engages in protected activity, we disagree.").

---

[23]"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 USCA § 2000e-3(a).

[24]"It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."   29 U.S.C. § 623(d), 29 U.S.C. § 623 ("Prohibition of age discrimination").

Second, it is logical that the grievances filed by the union stewards are then forwarded to management.  Furthermore, defendant does not dispute its knowledge of these grievances.  Mtn. Br. at 12; Rpl. at 5; *Joseph v. Manhattan and Bronx Surface Transit Operating Authority*, 2004 WL 1907750, *12 (S.D.N.Y. 2004) ("Defendant does not dispute its knowledge of the NYCCHR Complaint, nor of Plaintiff's complaints and grievance filings; thus, Plaintiff has established the second prong of his retaliation prima facie case.").  Therefore, the Court should assume that defendant knew about these grievances.  *See Sunkett v. Misci*, 183 F.Supp.2d 691, 718 (D. N. J. 2002) ("although Roberts Taylor claims that she complained extensively to a number of City officials, there is no evidence that any of her grievances were ever made known to a Defendant with power to take action against her."); *Howell v. Stark County Community Action Agency*, 63 F.Supp.2d 843, 848 (N. D. Oh. 1999) ("having filed an internal grievance, the plaintiff's protected activity was known to the defendant"); *Gay v. S.U.N.Y Health Science Center of Brooklyn*, 1998 WL 765190, *8 (E.D.N.Y. 1998) ("Defendant relies on the declarations of Jennings, Cuiman, and Rogowsky, stating that they had no knowledge, until the commencement of this lawsuit, that plaintiff had filed a grievance in December 1994. At this stage, I cannot conclude, as a matter of law, that none of the individuals who were involved in plaintiff's suspension did not know about the grievance.").[25]

---

[25]As previously noted, in a five-page January 2, 2003, AFSCME Local 207 member statement, plaintiff described her version of the events of December 25, 2002, and stated that Coombs needed to be fired for past acts of harassment.  Mtn. Ex. H; Amend. Rsp. Ex. E.  In the March 9, 2004 amended complaint, Coombs is not listed as a defendant; Ruffin is.  Amend. Compl. ¶¶ 2-23.  The March 9, 2004 amended complaint does not mention a December 25, 2002 incident involving Ruffin and witnessed by Coombs.  Still, to the extent that plaintiff's retaliation claim is based on this incident, the AFSCME Local 207 member statement would be evidence that defendant City of Detroit likely knew about her complaint.

Although defendant contends that "[p]laintiff cannot prove that any adverse action was taken against her because she was exercising a protected right[,]" Mtn. Br. at 12, as previously noted plaintiff received three-day suspensions on November 9, 2001 and December 30, 2002. Mtn. Exhibits D and H; Amend. Rsp. Ex. E. Assuming these suspensions were without pay, they are adverse employment actions. Furthermore, the complaints of harassment in the aforementioned four grievances (allegedly having taken place on February 2, 2002 [when Billingsley apparently would not let plaintiff use his security vehicle]; February 28, 2002 [car ride with Summers]; March 7, 2002 [golf cart incident with Summers]; July 3, 2002 [Billingsley and Coombs vehicle key incident] and October 22, 2002 [Summers' security incident report and written reprimand and Coombs' security incident report]) are against supervisors Summers and Billingsley and security manager Coombs. Also, plaintiff claims that Weathers "ordered pesticide sprayed in the Security Women's restroom [on July 26, 2002]" and that this caused plaintiff to have heart palpitations. Amend. Rsp. at 4.

Finally, at least based on timing, it is possible that there is a causal connection between the protected conduct and the adverse employment action or harassment. Specifically, the March 21, 2002 and/or September 2002 grievances predate the December 30, 2002 suspension and the complaints of harassment allegedly having occurred on July 3, 2002 and October 22, 2002. Therefore, the Court should disagree with defendant City of Detroit that "[plaintiff] cannot prove anything that would suggest that she was subject to retaliatory treatment that was in some way causally connected to her exercising a protected right." Mtn. Br. at 12. Accordingly, the Court should conclude that plaintiff has provided sufficient evidence to establish a genuine issue of material fact with respect to each element of her retaliation claim.

III.   **NOTICE TO PARTIES REGARDING OBJECTIONS:**

31

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated 9/1/05

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on September 1, 2005.
>
>                     s/Eddrey Butts
>                     Case Manager